*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-0179**

State of Minnesota,
Respondent,

vs.

Virginia Marie Carlson,
Appellant.

**Filed March 14, 2016
Affirmed
Schellhas, Judge**

Hennepin County District Court
File No. 27-CR-11-29606

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Brittany D. Lawonn, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Melissa Sheridan, Eagan, Minnesota (for appellant)

Considered and decided by Worke, Presiding Judge; Schellhas, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**SCHELLHAS**, Judge

Appellant challenges her conviction of felony theft by swindle on the basis that it is

not supported by sufficient evidence, and she argues that the jury instruction on accomplice

liability and misconduct by the prosecutor during closing argument were plain errors that affected her substantial rights.[1] Appellant also makes several pro se arguments. We affirm.

## FACTS

Appellant Virginia Marie Carlson and her husband Philip Lee Carlson owned Sugar woods Office Center LLC, which owned 49% of Amber Woods Office Center LLC.[2] In September 2006, Amber Woods and First Commercial Bank closed on a construction loan to build an office condominium (Amber Woods project). The loan agreement provided that loan funds would be disbursed over time in response to requests to pay for completed work on the Amber Woods project (draw requests) and supporting documents regarding completed work, including invoices and lien waivers from subcontractors.

Interspace, an entity owned by Virginia Carlson and Philip Carlson, was the general contractor for the Amber Woods project. In or around October 2007, the bank received draw request one from Interspace. Draw request one was unsigned; Amber Woods and Interspace were listed below the blank signature lines. Draw request one was accompanied

---

[1] A jury found appellant guilty of four counts of felony theft by swindle and one count of attempted felony theft by swindle. The district court sentenced appellant on a single count of felony theft by swindle. In her brief to this court, appellant states that she "filed this appeal to challenge the judgment of conviction" but, at various places in her brief, argues that this court should reverse her convictions. Because the district court did not adjudicate appellant's guilt on the remaining counts, appellant has only one conviction arising out of this case. *See Pierson v. State*, 715 N.W.2d 923, 925 (Minn. 2006) ("[A] conviction occurs only after the district court judge accepts, records, and adjudicates the jury's guilty verdict.").

[2] The remaining 51% of Amber Woods was owned by Hilloway East LLC, which was owned by Robert Roos, Michael Leuer, and James Fenning.

by supporting documents including an invoice purportedly from Sindbad Construction (Sindbad) and a lien waiver signed by Virginia Carlson for Interspace and purportedly signed by John Sindbad for Sindbad. In reliance on draw request one and its supporting documents, the bank released $173,988.73 in loan funds; the funds were disbursed by a check payable to "Sunblad [sic] & Interspace." John Sindbad purportedly endorsed the check, and the funds were deposited into an Interspace account. Interspace subsequently issued a check, signed by Virginia Carlson, to "Sunblind [sic]" in the amount of $55,860.91.

In or around November 2007, the bank received draw request two from Interspace. Draw request two was signed by Philip Carlson for Interspace and Amber Woods. Draw request two was accompanied by supporting documents including an invoice purportedly from Sindbad and a lien waiver signed by Virginia Carlson for Interspace and purportedly signed by John Sindbad for Sindbad. The supporting documents also included an invoice purportedly from Alpine Landscape Inc. and a lien waiver signed by Virginia Carlson for Interspace and unsigned by any Alpine agent. In reliance on draw request two and its supporting documents, the bank made two distinct releases of loan funds: a $224,689.64 check whose payees were "Interspace & Sunbald [sic]," and a $38,126.25 check whose payees were "Interspace & Alpine." The larger check was endorsed by John Sundblad; the smaller check was endorsed "Interspace Logan Ryan, for Alpine." Both checks were deposited into an Interspace account. Interspace subsequently issued a check, signed by Virginia Carlson, to Sundblad in the amount of $121,686.57. Alpine received no portion of the released funds.

3

In or around January 2008, the bank received draw request three from Interspace. Draw request three was signed by Philip Carlson for Interspace and Amber Woods. Draw request three was accompanied by supporting documents including an invoice from Logan Ryan Corporation, which was owned by Virginia Carlson and Philip Carlson, and a lien waiver signed by Virginia Carlson for Interspace and illegibly signed on behalf of Logan Ryan.[3] In or around February 2008, in reliance on draw request three and its supporting documents, the bank released $31,985 in loan funds; the funds were disbursed by a check whose payee was Logan Ryan. The check was endorsed "Logan Ryan Corporation," and the funds were deposited into a Logan Ryan account.

In or around May 2008, the bank received draw request four from Interspace. Draw request four was signed by Philip Carlson for Amber Woods and was signed by Virginia Carlson for Interspace and Amber Woods. Draw request four was accompanied by supporting documents including an invoice from Logan Ryan and a lien waiver illegibly signed on behalf of Logan Ryan.[4] In reliance on draw request four and its supporting documents, the bank released $164,522 in loan funds; the funds were disbursed by a check whose payee was Logan Ryan. The check was endorsed "partial" and "Logan Ryan Corp.," and the funds were deposited into a Logan Ryan account.

---

[3] The lien waiver may have been signed "Rory Synstelien" on behalf of Logan Ryan. Synstelien, who is Virginia Carlson's son and Philip Carlson's stepson, testified that he had no association with Logan Ryan and did not sign the lien waiver.

[4] The lien waiver may have been signed "Rory Synstelien" on behalf of Logan Ryan. Synstelien testified that he did not sign the lien waiver.

In or around July 2008, the bank received draw request five from Interspace. Draw request five was unsigned; Interspace, Amber Woods, Roos, Leuer, and Fenning were listed below the blank signature lines. Draw request five was accompanied by supporting documents including an invoice from Logan Ryan and a financial statement purportedly from Palo Companies Inc. The bank released no loan funds in reliance on draw request five and its supporting documents because subcontractors had begun to file liens against the Amber Woods project. Work stopped on the Amber Woods project in late 2008 or early 2009.

In or around October 2010, Roos and an agent of the bank went to police and reported suspected fraud by Virginia Carlson and Philip Carlson. Police investigated and determined that Virginia Carlson and Philip Carlson had committed "some fraud . . . or some theft by swindle" in connection with the five draw requests. In September 2011, respondent State of Minnesota charged Virginia Carlson with four counts of felony theft by swindle and one count of attempted felony theft by swindle, under Minn. Stat. § 609.52, subds. 2(4), 3(1) (2006); each count was charged with reference to Minn. Stat. § 609.05 (2006), the accomplice-liability statute.[5] Philip Carlson was identically charged, and the district court granted the state's motion to join the cases against Virginia Carlson and Philip Carlson.

---

[5] Count one was based on draw request one; counts two and three were based on draw request two; count four was based on draw requests three and four; and count five was based on draw request five.

The district court conducted a consolidated jury trial in August 2014. The state presented evidence that the five draw requests and their supporting documents were fraudulent in that the Sundblad, Alpine, and Palo invoices/statements did not originate from those companies; the Sundblad and Palo invoices/statements overreported the work completed by and the amounts owed to those companies; the Logan Ryan invoices reflected work that was not completed by that company and sought amounts that consequently were not owed to that company; and the lien waivers reflected payments that, in whole or in part, were not actually made to the companies whose waivers were sought. The state also presented evidence that each of the first four draw requests resulted in the bank's release of loan funds that ultimately came into the possession of Virginia Carlson and Philip Carlson. The jury found Virginia Carlson and Philip Carlson guilty as charged, and Virginia Carlson and Philip Carlson each were convicted of a single count (count one) of felony theft by swindle and sentenced to 21 months' imprisonment, with execution stayed for 5 years and 365 days' local confinement.

Virginia Carlson appeals.[6]

## DECISION

### I.

Virginia Carlson challenges the sufficiency of the evidence for her conviction. Assessment of the sufficiency of the evidence involves "a painstaking review of the record

---

[6] We declined to consolidate this appeal with Philip Carlson's appeal of his conviction. *State v. Virginia Carlson*, No. A15-0179 (Minn. App. Oct. 13, 2015) (order). We therefore address Philip Carlson's appeal separately. *State v. Philip Carlson*, No. A15-0190, slip op. (Minn. App. Mar. 14, 2016).

to determine whether the evidence and reasonable inferences drawn therefrom, viewed in a light most favorable to the verdict, were sufficient to allow the jury to reach its verdict." *State v. Vang*, 847 N.W.2d 248, 258 (Minn. 2014) (quotation omitted). The appellate court must "assume that the fact finder believed the state's witnesses and disbelieved any contrary evidence." *Gulbertson v. State*, 843 N.W.2d 240, 245 (Minn. 2014) (quotation omitted). We evaluate the sufficiency of circumstantial evidence using a two-step test. *State v. Fox*, 868 N.W.2d 206, 223 (Minn. 2015), *cert. denied*, 136 S. Ct. 509 (2015). We first identify the circumstances proved, "defer[ring] to the fact-finder's acceptance of the proof of these circumstances and the fact-finder's rejection of evidence in the record that conflicts with the circumstances proved by the State." *Id.* Then we "examine independently the reasonable inferences that might be drawn from the circumstances proved." *Id.* "To sustain a conviction based on circumstantial evidence, the reasonable inferences that can be drawn from the circumstances proved as a whole must be consistent with the hypothesis that the accused is guilty and inconsistent with any rational hypothesis except that of guilt." *Id.*

"It is axiomatic that it is the State's burden to prove every element of the charged offense." *State v. Struzyk*, 869 N.W.2d 280, 289 (Minn. 2015). "The elements of theft by swindle are: (i) the owner of the property gave up possession of the property due to the swindle; (ii) the defendant intended to obtain for himself or someone else possession of the property; and (iii) the defendant's act was a swindle." *State v. Pratt*, 813 N.W.2d 868, 873 (Minn. 2012); *see also* Minn. Stat. § 609.52, subd. 2(4) (providing that a person commits theft who "by swindling, whether by artifice, trick, device, or any other means, obtains

7

property or services from another person").[7] "The essence of a swindle is the defrauding of another of his property by deliberate artifice." *State v. Olkon*, 299 N.W.2d 89, 106 (Minn. 1980). "Theft by swindle requires an affirmative intent to defraud." *State v. Pirsig*, 670 N.W.2d 610, 615 (Minn. App. 2003), *review denied* (Minn. Jan. 20, 2004). "[P]ermanent deprivation [of the property] is not an element of theft by swindle." *Pratt*, 813 N.W.2d at 875 (quotation marks omitted). And the state need not prove that the swindler acted without claim of right to the property. *See State v. Ray*, 390 N.W.2d 843, 846–47 (Minn. App. 1986) (rejecting appellant's argument that he had a right to trick victims into paying him for legal services and concluding that swindle was complete "when appellant intentionally tricked [victims] into giving $10,000 for an appeal bond," reasoning that "[w]hether [victims] received legal services, either before or after they gave the $10,000, is immaterial to the criminal charge because they gave the $10,000 for a bond, not in payment for legal services").

"A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime." Minn. Stat. § 609.05, subd. 1. "'[I]ntentionally aids' includes two important and necessary principles: (1) that the defendant knew that his alleged accomplices were going to commit a crime, and (2) that the defendant intended his presence or actions to further the commission of that crime." *State v. McAllister*, 862 N.W.2d 49, 52

---

[7] Because Virginia Carlson was convicted of *felony* theft by swindle, the state was required to prove an additional element: that "the value of the property or services stolen is more than $35,000." Minn. Stat. § 609.52, subd. 3(1). Virginia Carlson does not contest the sufficiency of the evidence to prove the value element of felony theft by swindle.

8

(Minn. 2015) (quotations omitted). "Intent generally is proved circumstantially, by inference from words and acts of the actor both before and after the incident." *State v. Cox*, 798 N.W.2d 517, 537 (Minn. 2011) (quotation omitted).

The state presented evidence that in July 2007, Virginia Carlson and Philip Carlson complained that they had been "den[ied] . . . any type of payment that they requested" from the bank and that "they wanted to find a way . . . to get money through somebody else's invoice." On the same occasion, "[Virginia Carlson and Philip Carlson] talked about asking [John] Sundblad to put their fee onto his invoice and then [John] Sundblad could pay them for what they thought they were owed." About three months after Virginia Carlson and Philip Carlson made those statements, Interspace caused the first of five fraudulent draw requests to be transmitted to the bank, and the first two fraudulent draw requests involved John Sundblad.

The state also presented evidence that Virginia Carlson and Philip Carlson owned Interspace, acted on behalf of Interspace, "were the only ones submitting and putting together draw requests" in connection with the Amber Woods project, "knew all the specific line items" on the draw requests, "knew all the detail of the [draw requests and the supporting] documents," and "talked about the documents as if they had prepared them." Virginia Carlson personally signed supporting documents in connection with draw requests one, two, three, and four and checks in connection with draw requests one and two; Philip Carlson personally signed draw requests two, three, and four and, in connection with draw request two, induced John Sundblad to endorse a check disbursing loan funds in an amount that was not owed to Sundblad. Each of the first four draw requests resulted in the bank's

9

release of loan funds that ultimately came into the possession of Virginia Carlson and Philip Carlson.

We conclude that these circumstances are consistent with the hypothesis that Virginia Carlson intentionally aided or conspired with Philip Carlson in each count of commission and attempted commission of theft by swindle. We further conclude that these circumstances are inconsistent with any rational hypothesis except that Virginia Carlson intentionally aided or conspired with Philip Carlson in each count of commission and attempted commission of theft by swindle.

In her pro se brief, Virginia Carlson challenges the credibility of the state's evidence and asserts that alternative perpetrators committed the offenses. But "juries are generally in the best position to weigh the credibility of the evidence and thus determine which witnesses to believe and how much weight to give their testimony." *State v. Hanson*, 800 N.W.2d 618, 622 (Minn. 2011) (quotations omitted). Virginia Carlson had the opportunity to present evidence of alternative perpetrators during trial, and she does not argue that the district court excluded any alternative-perpetrator evidence. Virginia Carlson also asserts in her pro se brief that the state presented false evidence during trial, but we decline to address this argument because she provides no factual or legal support for her assertions. *Cf. State v. Jackson*, 773 N.W.2d 111, 126 (Minn. 2009) (rejecting without discussion appellant's claim that prosecutor knowingly and intentionally presented false evidence and witness testimony, when appellant "fail[ed] to present any evidence or specify legal authority to support his position"). We conclude that the state presented sufficient evidence for the jury to convict Virginia Carlson of theft by swindle.

## II.

Acknowledging that she did not object to the accomplice-liability instruction during trial, Virginia Carlson argues that the instruction was plain error. "[A] failure to object to jury instructions precludes review unless the appellant can show that there was a plain error affecting substantial rights." *Gulbertson*, 843 N.W.2d at 247. Such an error is grounds for reversal "only if it seriously affects the fairness, integrity, or public reputation of judicial proceedings." *State v. Taylor*, 869 N.W.2d 1, 15 (Minn. 2015) (quotations omitted). "An error is plain if it is clear or obvious; this means an error that violates or contradicts case law, a rule, or an applicable standard of conduct." *State v. Mosley*, 853 N.W.2d 789, 801 (Minn. 2014), *cert. denied*, 135 S. Ct. 1185 (2015). "An error affects a defendant's substantial rights when there is a reasonable likelihood that the instruction had a significant effect on the jury verdict." *State v. Davis*, 864 N.W.2d 171, 178 (Minn. 2015). An appellant bears the heavy burden of proving that an erroneous jury instruction had a significant effect on the verdict. *State v. Wenthe*, 865 N.W.2d 293, 299 (Minn. 2015), *cert. denied*, 136 S. Ct. 595 (2015).

In this case, the district court instructed the jury on accomplice liability with regard to Virginia Carlson:

> Defendant Virginia Carlson is guilty of a crime by another person when she has intentionally aided the other person in committing it or has intentionally advised, hired, counseled, conspired with or otherwise procured the other person to commit it. Defendant Virginia Carlson is guilty of a crime, however, only if the other person commits a crime. Defendant Virginia Carlson is not liable criminally for aiding, advising, hiring, counseling, conspiring or otherwise procuring

11

the commission of a crime unless some crime, including an attempt, is actually committed.

The court gave a nearly identical instruction with regard to Philip Carlson. The instructions tracked the language of the accomplice-liability statute. *See* Minn. Stat. § 609.05, subd. 1 ("A person is criminally liable for a crime committed by another if the person intentionally aids, advises, hires, counsels, or conspires with or otherwise procures the other to commit the crime."). But the court also was required to

> explain to the jury that in order to find a defendant guilty as an accomplice, the jury must find beyond a reasonable doubt that the defendant knew h[er] alleged accomplice was going to commit a crime and the defendant intended h[er] presence or actions to further the commission of that crime.

*State v. Milton*, 821 N.W.2d 789, 808 (Minn. 2012). The court's failure to so explain is plain error. *State v. Kelley*, 855 N.W.2d 269, 277–78 (Minn. 2014). The state rightly concedes this point.

The issue before us is whether the district court's plain error affected Virginia Carlson's substantial rights; that is, whether a reasonable likelihood exists that the jury's verdict would have been different had the court properly instructed the jury regarding accomplice liability. "An erroneous jury instruction will not ordinarily have a significant effect on the jury's verdict if there is considerable evidence of the defendant's guilt." *Id.* at 283–84. In our analysis of the sufficiency of the evidence, we already have discussed the considerable evidence of Virginia Carlson's guilt.

Moreover, Virginia Carlson's defense was not that she did not know that Philip Carlson was going to commit theft by swindle; neither was Virginia Carlson's defense that

12

she did not intend her presence or actions to further Philip Carlson's commission of theft by swindle. Rather, Virginia Carlson's defense was that no crimes were committed. Virginia Carlson's counsel asserted, "[T]his case should never have been here, because this isn't a criminal dispute. This is a civil dispute." Counsel referred to Virginia Carlson and Philip Carlson as "scapegoats" for a construction project that encountered various problems and was not profitable.

We look to supreme court caselaw for guidance here. In *Kelley*, the appellant challenged his conviction of first-degree aggravated robbery based on an unobjected-to jury instruction on accomplice liability. *Id.* at 272. The supreme court concluded that the district court plainly erred in "fail[ing] to explain the intentionally aiding element [of accomplice liability] as required by *Milton*." *Id.* at 275, 277–78. Yet the supreme court also concluded that "there is no reasonable likelihood that the erroneous jury instruction had a significant effect on the jury verdict because there is considerable evidence of [the appellant]'s guilt, and his defense did not focus on accomplice liability." *Id.* at 284. The court noted that "[the appellant] did not argue that he did not know the other person was going to commit the crime, or that he did not intend his presence to further the commission of the crime." *Id.*

Similarly in this case, the state presented strong evidence that Virginia Carlson and Philip Carlson formed and executed a plan to trick the bank into releasing loan funds and to gain possession of those funds. And Virginia Carlson made no claim that she was unaware of Philip Carlson's crimes or that she had no intent to aid Philip Carlson's commission of the crimes; instead, she argued that no crimes were committed. Virginia

13

Carlson has not met her heavy burden to prove a reasonable likelihood that the jury would not have found her guilty had it been instructed properly under *Milton*. The district court's plain error therefore did not affect Virginia Carlson's substantial rights and is not a ground for reversal.

**III.**

The prosecution stated during closing argument:

> Now, what is this case not about? The defense in this case has attempted to raise various issues through cross-examination of witnesses, through documents, and through their expert has attempted to raise issues that quite frankly are not relevant to your determination of whether Philip Carlson and Virginia Carlson are guilty of four counts of theft by swindle and one count of attempted theft by swindle. Indeed, this case is not about how Philip Carlson and Virginia Carlson used the loan funds, nor is it about whether the defendants claim to have a right to loan funds. . . . And, finally, it is not about sloppy bookkeeping. If there was any sloppiness in this case, it was that more care could have been taken in manufacturing the fake invoices. These issues as argued by the defense are efforts to get you to engage in a flight of fancy, a flight away from the evidence that actually matters in this case. These issues raised by the defense are what one might call shiny little objects seemingly worth chasing after, but actually nothing more than a distraction from the evidence proving the defendants' guilt.

The prosecution also referred to witness testimony as "provid[ing] another example of the defense asking you to chase after what I called little shiny objects." Virginia Carlson argues that these statements were prosecutorial misconduct. She admits that she did not object to the prosecution's closing argument during trial, but she contends that the purported misconduct was plain error that affected her substantial rights.

14

Alleged prosecutorial misconduct that was not objected to is reviewed using a "modified plain-error test." *Mosley*, 853 N.W.2d at 801. The defendant has the burden to demonstrate that the misconduct was plainly erroneous. *Id.* "If plain error is established, the burden then shifts to the State to demonstrate that the error did not affect the defendant's substantial rights." *Id.* If the appellate court determines that a plain error affected the defendant's substantial rights, the court "may correct the error only if it seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.* (quotations omitted).

An appellate court reviewing a closing argument for prosecutorial misconduct "view[s] the closing argument as a whole, rather than just selective phrases or remarks that may be taken out of context or given undue prominence to determine whether reversible error has occurred." *State v. Munt*, 831 N.W.2d 569, 587 (Minn. 2013) (quotation omitted). Virginia Carlson argues that the prosecution committed misconduct by disparaging and belittling the defense. The supreme court has "cautioned prosecutors against generally belittling a particular defense in the abstract" but also has "made it clear that the prosecutor is free to specifically argue that there is no merit to a particular defense in view of the evidence or no merit to a particular argument." *State v. Salitros*, 499 N.W.2d 815, 818 (Minn. 1993). Here, the prosecution argued that issues raised by the defense were "not relevant," "a flight of fancy," "shiny little objects," and "nothing more than a distraction." The prosecution then "turn[ed] to what the evidence shows in the way of facts" and proceeded to summarize the evidence presented during trial and the issues that "the state submits this case is about." The prosecution permissibly attempted to draw the jury's attention to certain issues while contending that other issues and arguments raised by the

15

defense were irrelevant or without merit. *Cf. State v. Graham*, 764 N.W.2d 340, 356 (Minn. 2009) (concluding that prosecutor did not make improper closing argument by "argu[ing] that the defense had not, based on the evidence, presented a solid case" through "statements directed at . . . defense tactics," such as suggestion that "[defendant's] arguments amounted to throwing things at the wall to 'see what sticks'"); *State v. Simion*, 745 N.W.2d 830, 844 (Minn. 2008) (concluding that defendant did not meet burden to show that prosecutor's closing argument was error where "prosecutor's comment . . . was designed to draw the jury's attention to [defendant]'s attempt to distract from the criminal issues at trial"). The prosecutor's arguments were not error.

In her pro se brief, Virginia Carlson challenges the prosecution's references to the draw requests and their supporting documents as "false," "fake," and "fraudulent." But witnesses testified during trial that these documents were fraudulent. A prosecutor is permitted to review the evidence with the jury and to argue reasonable inferences from the evidence. *See State v. McCray*, 753 N.W.2d 746, 753–54 (Minn. 2008) (quoting with approval ABA Standards for Criminal Justice, which provide that "[i]n closing argument to the jury, the prosecutor may argue all reasonable inferences from evidence in the record"). Virginia Carlson has not demonstrated that these comments by the prosecutor were error.

**IV.**

Virginia Carlson makes additional arguments in a pro se brief.

*Brady violation*

"A failure by the State to disclose material, exculpatory evidence justifies a new trial." *State v. Brown*, 815 N.W.2d 609, 622 (Minn. 2012) (citing *Brady v. Maryland*, 373 U.S. 83, 87–88, 83 S. Ct. 1194, 1196–97 (1963)). "To establish a *Brady* violation, it must be true that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or it is impeaching; (2) the evidence was willfully or inadvertently suppressed by the State; and (3) prejudice to the accused resulted." *Id.* "Whether a discovery violation occurred presents a question of law, which [appellate courts] review de novo." *State v. Colbert*, 716 N.W.2d 647, 654 (Minn. 2006).

Virginia Carlson appears to argue that the state committed a *Brady* violation by delaying its subpoena of documents regarding the Amber Woods project from the Federal Deposit Insurance Corporation (FDIC documents) and by failing to more thoroughly investigate and disclose the financial details of the project. Virginia Carlson generally asserts that the allegedly suppressed evidence is favorable to her, but she makes no attempt to identify particular evidence that is either exculpatory or impeaching. Moreover, she provides no authority for her argument that the timing of the state's subpoena and the scope of the state's investigation constitute suppression of evidence under *Brady*. Finally, while she baldly asserts that the alleged suppression was prejudicial, she does not attempt to explain how prejudice resulted. We conclude that Virginia Carlson has failed to establish any element of a *Brady* violation.

17

*Right to testify*

"A defendant's right to testify is protected by the Due Process Clause of the United States Constitution and Minnesota law." *Andersen v. State*, 830 N.W.2d 1, 11 (Minn. 2013). "The defendant's waiver [of that right] must be knowingly and voluntarily made." *Id.* "The defendant has the burden of proving that he or she did not voluntarily and knowingly waive the right to testify." *Id.* "Absent a finding to the contrary, [appellate courts] presume that the defendant waived the right to testify for the reasons stated on the record." *Id.*; *see also State v. Smith*, 299 N.W.2d 504, 506 (Minn. 1980) ("Without anything in the record suggesting otherwise, we must presume that the decision not to testify was made by defendant voluntarily and intelligently.").

Virginia Carlson argues that the state "filed a second case of attempted theft by swindle against [her] days before trial as a virtual 'gag order' to prevent [her] from testifying on [her] own behalf under the threat of perjury and/or impeachment." But the record shows that, prior to Virginia Carlson's waiver of her right to testify, the district court addressed her personally regarding the existence and substance of her testimonial rights. Virginia Carlson affirmed that she understood her rights and that she had no questions about what the court had said. Virginia Carlson later affirmed that she was given "enough time to talk with [her] lawyers" about whether to testify, that her "lawyers answered all of [her] questions," and that she made her "own personal choice . . . not to testify." Because nothing in the record suggests that Virginia Carlson's waiver of her right to testify was coerced by the state or otherwise was not knowing and voluntary, we reject her argument to the contrary.

18

*Miscellaneous arguments*

Virginia Carlson argues that she was entitled to dismissal of the indictment against her because the state failed to disclose exculpatory evidence to the grand jury. But Virginia Carlson was charged by complaint, not by indictment, and she identifies no deficiency in the complaint. Consequently, this argument warrants no further consideration.

Virginia Carlson argues that the draw requests and their supporting documents were inadmissible under Minn. R. Evid. 408. That rule provides that

> [e]vidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount.

Minn. R. Evid. 408. The rule mandates exclusion in a civil suit of evidence of settlement negotiations regarding the claims underlying that suit; it has no application in this criminal case.

Virginia Carlson argues that "[t]he [district] court erred in ruling that the [FDIC documents] not be used at trial." The court actually ruled that *the state* could not use the FDIC documents in its case in chief. Virginia Carlson and Philip Carlson, on the other hand, were given an additional week to review the FDIC documents for possible use in their defenses. In any event, Virginia Carlson fails to explain why the court's ruling was erroneous. We therefore do not give further consideration to this general assignment of error. *See State v. Andersen*, 871 N.W.2d 910, 915 (Minn. 2015) ("An assignment of error based on mere assertion and not supported by any argument or authorities in appellant's

19

brief is waived and will not be considered on appeal unless prejudicial error is obvious on mere inspection." (quotation omitted)).

Virginia Carlson appears to make a public-policy argument against her conviction, claiming that "if left to stand [the conviction] creates a *fatal defect* to civil law." Virginia Carlson's failure to identify reversible error cannot be overcome by public-policy arguments. *See State v. Christenson*, 827 N.W.2d 436, 441 n.2 (Minn. App. 2012) ("Because this court is limited in its function to correcting errors it cannot create public policy." (quotation omitted)), *review denied* (Minn. Feb. 19, 2013).

Virginia Carlson argues against restitution. Although the prosecutor initially argued for restitution at the sentencing hearing, the state ultimately did not seek a restitution order, and the district court issued no restitution order. Virginia Carlson makes no allegation of error for our review.

Virginia Carlson's pro se reply brief raises several issues, none of which was addressed in her counseled brief or in her lengthy principal pro se brief. "Failure to brief or argue an issue on appeal results in waiver of that issue on appeal." *Ouk v. State*, 847 N.W.2d 698, 701 n.7 (Minn. 2014), *cert. denied*, 135 S. Ct. 1429 (2015). "Issues not raised or argued in appellant's [principal] brief cannot be revived in a reply brief." *State v. Petersen*, 799 N.W.2d 653, 660 (Minn. App. 2011) (citing *State v. Yang*, 774 N.W.2d 539, 558 (Minn. 2009)), *review denied* (Minn. Sept. 28, 2011). We decline to address the issues raised in Virginia Carlson's pro se reply brief because she forfeited their appellate consideration.

**Affirmed.**