*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-0961**

State of Minnesota,
Respondent,

vs.

Patrick Charles Bonga,
Appellant.

**Filed April 11, 2016
Affirmed
Reyes, Judge**

Becker County District Court
File No. 03CR132397

Lori Swanson, Attorney General, Michael Everson, Assistant Attorney General, St. Paul, Minnesota; and

Gretchen D. Thilmony, Becker County Attorney, Detroit Lakes, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, St. Paul, Nathan R. Sellers, Special Assistant Public Defender, Fabyanske, Westra, Hart & Thomson, P.A., Minneapolis, Minnesota (for appellant)

Considered and decided by Ross, Presiding Judge; Johnson, Judge; and Reyes, Judge.

UNPUBLISHED OPINION

**REYES**, Judge

Appellant argues that the district court erred by denying his petition for postconviction relief, claiming that his trial counsel was ineffective by failing to properly calculate his criminal-history score when the state offered him a plea deal. On direct appeal, he also alleges that his trial counsel was ineffective on various other grounds. We affirm.

## FACTS

On November 4, 2013, appellant Patrick Charles Bonga went to the complainant T.D.'s home where they consumed alcohol together. At some point, appellant left T.D.'s home, but when he returned, he was upset and aggressive. Appellant suddenly demanded money from T.D., but T.D. refused because he needed the money to pay rent. Appellant then shoved T.D. into the closet door, breaking it. Appellant stabbed T.D. in the leg and punched him in the face.

When T.D. could not get the bleeding to stop, he called 911 for medical assistance. Officers Phillips and Vaughn came to his house, and he told them that appellant had stabbed him. T.D. also texted and called his mother, G.D., informing her that appellant had stabbed him. Appellant was arrested on November 14, 2013. The state charged him with two counts of second-degree assault.[1] Prior to trial, appellant's trial counsel met with him to discuss a plea offer from the state. On November 25, 2013, based on

---

[1] The second charge of second-degree assault was dismissed prior to the trial.

appellant's criminal-history score and the applicable sentencing guidelines, the state offered him "the low end" or 44 months to plead guilty to the charges. Appellant rejected the state's offer.[2] He proceeded to a jury trial and was found guilty of second-degree assault. After trial, appellant informed his trial counsel that there was an error in the calculation of his criminal-history score in his preplea worksheet. Appellant's criminal-history score and the applicable sentencing guidelines were corrected to reflect a score of four, which would have resulted in a low end of 39 months. The district court sentenced appellant to 54 months in prison.

**The trial**

T.D. was scheduled to testify on the first day of trial, but his testimony was rescheduled because he came to court intoxicated. As a result, prior to T.D.'s testimony, Officers Phillips and Bergren testified that T.D. told them that appellant stabbed him. Appellant's trial counsel did not object to the officers' testimony as hearsay in anticipation that T.D. would testify, but preserved his objection in the event that T.D. failed to appear.

T.D. testified the next day. He stated that appellant shoved him against the closet door, punched him in the face, and stabbed him in the leg. He also stated that he was afraid of appellant and that appellant threw a lit cigarette in his face. Appellant's trial

---

[2] We note that a correct calculation of appellant's criminal-history score would result in a low end offer of 39 months to plead guilty to the charges. However, the record is silent as to whether the state would have, indeed, offered appellant 39 months to plead guilty to the charges, and appellant does not challenge the second prong in *Missouri v. Frye*, 132 S. Ct. 1399, 1402-03 (2012).

counsel made no objection to this statement. Following T.D.'s testimony, G.D. testified that T.D. called her and told her that appellant had stabbed him. Appellant's alibi witness, J.N., testified that appellant was with her the night the incident occurred. But on cross examination, the state impeached J.N.'s prior statement that she had not previously observed appellant use drugs or alcohol by introducing evidence of her probation from a recent felony controlled-substance conviction. The state also introduced Officer Kuhn's testimony that J.N. previously stated that appellant arrived at her house after 9:00 p.m., which impeached her trial testimony and statement to officers that he arrived around 5:00 p.m. Appellant's trial counsel did not object to any of the impeaching testimony. Last, Officer Vaughn also testified that T.D. identified appellant as the person who stabbed him.

Appellant filed a direct appeal from the judgment of conviction. He then moved to stay the appeal to pursue postconviction proceedings. He argued that his trial counsel was ineffective for failing to correctly calculate and investigate his criminal-history score. When appellant's trial counsel was appointed, he received the court-information summary.[3] The court-information summary reflected, on two separate pages, that appellant was previously convicted on the same date for kidnapping and assault. Because his felony offenses for kidnapping and second-degree assault were impermissibly counted twice, the preplea worksheet, dated December 3, 2013, incorrectly reflected that appellant's total criminal-history score was five, rather than the correct score of four.

---

[3] The court-information summary is a prebail evaluation form that details appellant's criminal history.

The district court determined that appellant did not prove that his trial counsel's representation during plea negotiations fell below an objective standard of reasonableness and failed to show that there "was a reasonable probability that, but for counsel's errors, [he] would have accepted the [s]tate's plea offer." After the postconviction order, the stay of the appeal was dissolved, and the appeal was reinstated.

## D E C I S I O N

Appellant alleges that the district court erred by denying his petition for postconviction relief. In addition, on direct appeal, appellant argues that his trial counsel (1) inappropriately shifted the burden of proof to appellant during his opening statement; (2) failed to object to four prosecution witnesses who identified appellant as the perpetrator through hearsay; (3) failed to object to inadmissible *Spreigl* evidence; and (4) failed to object to the state's impeachment of appellant's alibi witness through an inadmissible prior conviction and inadmissible hearsay. We address each argument in turn.

## I.    **Appellant's postconviction claim of ineffective assistance of counsel**

Claims of ineffective assistance of counsel are analyzed under the two-prong analysis from *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). First, the defendant must show that his or her counsel's representation fell below an objective standard of reasonableness. *Id.* On review, "[t]here is a strong presumption that counsel's performance was reasonable." *Schleicher v. State*, 718 N.W.2d 440, 447 (Minn. 2006) (quotation omitted). Second, the defendant must show that "a reasonable probability exists that the outcome would have been different but for counsel's errors."

5

*State v. Bobo*, 770 N.W.2d 129, 137 (Minn. 2009) (quotation omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. 693, 104 S. Ct. at 2068 (1984). "We review the denial of postconviction relief based on a claim of ineffective assistance of counsel de novo because such a claim involves a mixed question of law and fact." *Hawes v. State*, 826 N.W.2d 775, 782 (Minn. 2013). "The court's factual findings will not be disturbed unless they are clearly erroneous. We review the court's legal conclusions de novo." *State v. Nicks*, 831 N.W.2d 493, 503 (Minn. 2013) (citations omitted).

In *Missouri v. Frye*, the Supreme Court articulated a two-prong test that a person must satisfy when asserting an ineffective-assistance-of-counsel claim involving a rejected guilty plea. 132 S. Ct. at 1402-03. Under *Frye*, appellant "must demonstrate a reasonable probability. . . that they would have accepted the more favorable plea offer had they been afforded effective assistance of counsel and that the plea would have been entered without the prosecution's canceling it or the trial court's refusing to accept it." *Id.* Appellant challenges only the first prong of the *Frye* test.

Here, the district court rejected appellant's argument that, had trial counsel investigated and communicated the correctly calculated plea offer, there is a reasonable probability he would have accepted the state's plea offer. Specifically, the district court found that the testimony of appellant's trial counsel and appellant demonstrated that appellant "showed no interest in pleading guilty, but instead focused on proving his innocence at trial."

6

The district court's factual findings are supported by the record. At the postconviction hearing, appellant testified that he could not be 100% sure, nor could he be certain that he would have accepted the offer at 39 months because that chance is now lost, but it is possible that he would have pleaded guilty. He also testified that he was unsure if there was an offer of a "certain number" where he would have "tapped out" (given up or pled), but he felt that he would not receive a fair trial.[4] "There is a chance that I may have pleaded guilty to it. But 39 certainly sounds more attractive than 44." Despite these representations at the postconviction hearing, appellant consistently maintained his innocence at the pretrial hearing, sentencing, and the evidentiary hearing.

Appellant's trial counsel testified that he was surprised by appellant's assertion that he might have accepted a 39-month plea bargain. More specifically, he testified that if he "had any inkling that this was a settleable case, [he] would have pursued [settlement]." Appellant's trial counsel further testified that appellant consistently maintained his innocence and did not feel that this was a "settleable case." Although he testified at appellant's sentencing hearing that there was a possibility that "decisions could have been made prior to the trial" and "some agreement could have been reached," he was merely zealously advocating for appellant, but did not believe that appellant would have accepted the plea offer even at a lower number.

---

[4] Appellant also offered an affidavit that stated there was no "magic number," below which he would have pleaded to the state's offer, but had the correct offer been made prior to trial, "there is a reasonable probability that [he] would have accepted the offer."

Appellant's testimony fails to establish a reasonable probability that, but for the alleged error, he would have pleaded guilty. Appellant's testimony as to whether he would have accepted an offer of 39 months was only that it was "possible" or "there is a chance," not that there was a reasonable probability he would have accepted it. Furthermore, his trial counsel's testimony showed that appellant had no intention to plead guilty, and appellant maintained his innocence throughout the proceedings. *See Leake v. State*, 767 N.W.2d at 11 (reaching similar conclusion on similar facts). As such, appellant failed to meet his burden on the first prong of the *Frye* test, and the district court therefore did not err by denying his petition for relief. Because we conclude that appellant is unable to establish a reasonable probability that, but for the alleged error, he would have pleaded guilty, we need not consider the first *Strickland* prong. 466 U.S. at 687, 104 S. Ct. at 2064.

## II. Appellant's claims on direct appeal of ineffective assistance of trial counsel

### A. Claim of improper shifting of the burden of proof

Appellant next contends that he was denied effective assistance of trial counsel because his trial counsel improperly shifted the burden of proof to appellant regarding appellant's alibi defense.

Here, appellant used an alibi defense at trial. During opening statement, appellant's trial counsel stated:

> In the end, the defense has no way to prove to you who actually did do a stabbing, but then again, we don't have to. We have the burden of proof only to establish to you that [appellant] has an alibi. That is the heart of the defense in this

8

case. And in no way does [appellant] have a burden of proof to show you who did it instead.

However, in closing arguments appellant's trial counsel more clearly articulated the state's burden to prove appellant's guilt beyond a reasonable doubt. And the district court provided the following curative statement:

> The lawyers' arguments are intended to help you understand the evidence and to apply the law. . . . you must disregard any statement by a lawyer about the law which differs from my instructions concerning the law.

*See State v. Yang*, 627 N.W.2d 666, 681 (Minn. App. 2001) (highlighting the district court's use of curative instructions to a jury and rendering improper remarks as innocuous), *review denied* (Minn. July 24, 2001). The district court further instructed the jury that "[t]he defendant is not required to prove his innocence. The burden of proof rests upon the prosecution to establish the guilt of the defendant beyond a reasonable doubt." *See State v. McDonough*, 631 N.W.2d 373, 389 n.2 (Minn. 2001) (illustrating that, where the district court clearly and comprehensively instructed the jury regarding the burden of proof, attempts to shift the burden of proof are often nonprejudicial). Appellant thus cannot prove that he was prejudiced. *Strickland*, 466 U.S. at 691, 104 S. Ct. 2066 ("An error by counsel, . . . does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment."). Trial counsel's conduct did not fall below an objective standard of reasonableness. *Id*. Therefore, appellant's claim fails under the *Strickland* analysis.

## B.    Failure to object to alleged hearsay evidence

9

## 1. Alleged hearsay from various witnesses

Appellant argues that he was denied effective assistance of trial counsel because his counsel failed to object to inadmissible hearsay evidence. More specifically, appellant argues that the testimony of Officers Vaughn, Phillips, and Bergren, and G.D. identifying appellant as the perpetrator based on T.D.'s statements to them were inadmissible hearsay. This argument is without merit.

Appellant's trial counsel testified that he did not object to the officers' testimony because he anticipated that T.D. would testify, at which point their statements would be admissible. But he preserved his objection in the event that T.D. failed to testify. Under Minn. R. Evid. 801(d)(1)(B) a statement is not hearsay when "[t]he declarant testifies at the trial . . . and is subject to cross-examination concerning the statement, and the statement is consistent with the declarant's testimony and helpful to the trier of fact in evaluating the declarant's credibility as a witness." An out-of-court statement is helpful to the trier of fact to evaluate the witness' credibility when, the witness' credibility has been challenged, and the statement bolsters "the witness' credibility with respect to that aspect of the witness' credibility that was challenged." *State v. Nunn*, 561 N.W.2d 902, 909 (Minn. 1997).

T.D.'s statement that appellant stabbed him was admissible as a prior consistent statement. T.D.'s credibility was challenged in the state's opening statement with regard to his statement that appellant was the perpetrator and his consistent statement to various witnesses that appellant stabbed him. Appellant challenged the credibility of T.D.'s statement in opening statements by (1) introducing alibi testimony; (2) introducing an eye

10

witness who failed to identify appellant or T.D.; (3) stating that T.D.'s facts regarding the encounter changed; and (4) stating that T.D. "chose to falsely accuse [appellant] in an attempt to cover up what really happened." Because T.D.'s credibility was challenged, the officers' testimony was helpful to the trier of fact and bolstered T.D.'s credibility with respect to his statement.

Because T.D. testified at trial regarding the statements previously made to the other witnesses, the witnesses were subject to cross-examination regarding T.D.'s statement, and their testimony was helpful in evaluating T.D.'s credibility, the statements were admissible as prior consistent statements and were not hearsay. Minn. R. Evid. 801(d)(1)(B). Moreover, trial counsel's decision to not object was reasonable under the circumstances. *Dukes v. State*, 660 N.W.2d 804, 810 (Minn. 2003) (stating that court's "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of the conduct"). Further, he preserved the right to object if T.D. did not testify. And the record reflects that appellant's trial counsel carefully considered the decision to allow officers Phillips and Bergren to testify before T.D.[5]

Moreover, T.D.'s statements to officers Phillips and Vaughn are also admissible as an excited utterance. Under Minn. R. Evid. 803, "[a] statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by

---

[5] Appellant also challenges the testimony of Officer Vaughn and G.D., but they testified after T.D. and meet the requirements under the rule. Minn. R. Evid. 801(d)(1)(B). Accordingly, we need not consider his argument with respect to those witnesses.

the event or condition" is not excluded by the hearsay rule even when the declarant is unavailable.

Here, Officers Phillips and Vaughn responded to T.D.'s apartment in response to his 911 call and arrived within approximately three minutes of receiving the call. Phillips testified that T.D. was in distress and in a state of shock. Vaughn testified that T.D. was "in a panic and shock" and was "kind of freakin[g] out." While T.D. was under the stress of excitement caused by the assault, he identified appellant as the person who stabbed him. *See* Minn. R. Evid. 803. Therefore, the statements were admissible as an excited utterance and were excluded by the hearsay rule.

We conclude that appellant failed to show that his trial counsel rendered ineffective assistance of counsel by failing to object to the alleged statements.

### 2. Alleged hearsay from officer Kuhn

Appellant further alleges that his trial counsel was ineffective because he failed to object to hearsay testimony from Officer Kuhn regarding appellant's alibi witness J.N. and J.N.'s neighbor. We disagree.

Officer Kuhn testified that J.N. was not at her house when he went to speak with her, but he was able to locate her by talking to J.N.'s neighbor. The neighbor told Kuhn that J.N. came to his residence and asked for a ride. The neighbor also told him that J.N. said she was "frightened because [appellant] was there." But the officer testified that J.N. told him that she was not afraid of appellant. Similarly, at trial when J.N. was asked whether she ever told anyone that she was afraid of appellant, she responded, "No."

12

First, Officer Kuhn's statements are admissible because J.N. testified at trial and was subject to cross-examination regarding her statement to the neighbor and the officer. Minn. R. Evid. 801(d)(1). Second, J.N.'s statements do not demonstrate that she was fearful of appellant. Third, and most importantly, the neighbor's statement that appellant was at J.N.'s house bolstered appellant's alibi. Therefore, trial counsel's decision not to object to the neighbor's hearsay statement was related to trial strategy because it supported appellant's alibi. "We will generally not review an ineffective-assistance-of-counsel claim that is based on trial strategy." *Andersen v. State*, 830 N.W.2d 1, 10 (Minn. 2013).

## C. Failure to object to alleged Minn. R. Evid. 404(b) evidence

Appellant argues that he was denied effective assistance of trial counsel because his counsel failed to object to rule 404(b) evidence, known as *Spreigl* evidence. *State v. Spreigl,* 272 Minn. 488, 139 N.W.2d 167 (1965).

Prior to the alleged *Spreigl* evidence elicited during the complainant's testimony, the state provided testimony regarding the nature of the relationship between T.D. and appellant.

> Q: Were you ever scared of the defendant before?
> A: I had seen some aggressive behavior, I just blew it off I guess.
> Q: When you say aggressive behavior, what do you mean?
> A: I've seen his temper flare and [he] threw a cigarette, a lit cigarette in my face once because I asked him to leave my apartment and he just got mad for whatever reason. I don't know.
> Q: So he threw a cigarette at you?
> A: Yes.
> Q: Did anything happen beyond that?

13

A:     No.  I had people in the house, you know.  I've been
       scared of him before, I mean he scares me sometimes.
       But I guess I didn't think anything of it, you know.

The supreme court has long held that *Spreigl* notice is "not intended to apply with respect to evidence . . . which bears directly on the history of the relationship existing between one accused of the [crime] and the victim." *State v. Boyce*, 284 Minn. 242, 243, 170 N.W.2d 104, 106 (1969); *see State v. Waukazo*, 374 N.W.2d 563, 565 (Minn. App. 1985) (discussing with approval the admission of relevant evidence "to illuminate [the] relationship [between defendant and victim] and place the incident with which [defendant] was charged in proper context").  Appellant mischaracterizes the state's examination of T.D.  This testimony simply provided context related to appellant and T.D.'s prior interactions and relationship.  Moreover, even if the relationship testimony could be construed as *Spreigl* evidence, appellant was not prejudiced from the lack of notice related to T.D.'s relationship testimony.  "The purpose underlying the *Spreigl* notice procedure is to ensure that a defendant is not forced to defend himself against unexpected testimony of prior offenses." *State v. Schweppe*, 306 Minn. 395, 404, 237 N.W.2d 609, 616 (1975).  Here, appellant should have reasonably expected T.D.'s testimony given that the trial was regarding an assault between appellant and T.D.  Therefore, appellant has failed to show that his trial counsel's conduct fell below an objective standard of reasonableness by deciding to not object to the alleged *Spreigl* evidence.

      **D.**     **Failure to object to impeaching testimony**

14

Last, appellant argues that he was denied effective assistance of counsel because his trial counsel failed to object to the improper impeachment of appellant's alibi witness, J.N. We are not persuaded.

Decisions on whether to object at trial are matters of trial strategy. *White v. State*, 711 N.W.2d 106, 110 (Minn. 2006). As stated above, we generally do not review claims of ineffective assistance of counsel based on trial strategy. *See Andersen*, 830 N.W.2d at 10. And, it is presumed that, in making substantial decisions, trial counsel exercised "reasonable professional judgment" while providing sufficient assistance to appellant. *Dukes*, 660 N.W.2d at 810-11.

Here, J.N. testified that appellant was with her the night the incident occurred. But on cross-examination, the state introduced evidence that J.N. is "on probation for a felony controlled substance conviction" from 2012. The state impeached J.N.'s prior statement on direct examination that she had not previously observed appellant use drugs or alcohol. The state also introduced Officer Kuhn's testimony that J.N. previously stated appellant arrived at her house after 9:00 p.m., which impeached her trial testimony that he arrived around 5:00 p.m. Appellant alleges this was hearsay. But, J.N.'s prior inconsistent statements are admissible for impeachment purposes. *State v. Saporen*, 205 Minn. 358, 364-65, 285 N.W. 898, 902 (1939). J.N.'s statements were not hearsay and were not offered as substantive evidence. Her statements were offered to show that she was not offering truthful testimony.

Prior to Officer Kuhn's testimony, appellant's trial counsel discussed J.N.'s inconsistencies in her testimony during her direct examination. This suggests that it was

trial strategy to discuss the inconsistent statement on direct examination and not call additional attention to it during the officer's testimony. Given our reluctance to second-guess trial counsel's strategic decisions, based on the record before us, appellant's trial counsel's decision to not object did not fall below an objective standard of reasonableness. Appellant's claim of ineffective assistance of trial counsel fails.

**Affirmed.**