*This opinion is nonprecedential except as provided by Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A22-1555**

State of Minnesota,
Respondent,

vs.

Jack Guy,
Appellant.

**Filed November 13, 2023
Affirmed
Bjorkman, Judge**

Hennepin County District Court
File No. 27-CR-21-4146

Keith Ellison, Attorney General, St. Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Linda M. Freyer, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, Davi E. Axelson, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Connolly, Presiding Judge; Segal, Chief Judge; and Bjorkman, Judge.

**NONPRECEDENTIAL OPINION**

**BJORKMAN**, Judge

Appellant challenges his conviction of felony domestic assault, arguing that (1) the district court violated his confrontation rights by admitting the non-testifying

complainant's statement to police at the scene, as recorded by an officer's body-worn camera; and (2) the evidence is insufficient to prove the offense took place in Hennepin County. We affirm.

**FACTS**

At 10:15 p.m. on February 27, 2021, a woman called 911 and asked for police to come to an address on Penn Avenue North in Minneapolis. She said, "My baby daddy just beat me. He getting in the car now, and I'm going to the house." The call ended, but the woman called back three minutes later and again requesting police at the same address, confirming that it was "[f]or the domestic." The dispatcher said they "ha[d] a call entered for that" and asked if something else happened. She replied, "No, he's about to leave, and he bust my lip open [inaudible]." The dispatcher asked if she needed an ambulance, but the call ended without an answer.

A "few minutes" later, two Minneapolis police officers arrived at the address. After receiving no answer at the front door, they went around the house. In the back alley, they encountered a young woman who was holding a small child and walking away from a vehicle with one door open. The woman had a bloody lip, blood droplets on her clothes, and appeared "scared and somewhat distraught." She was wearing only a sweatshirt, leggings, and sandals as she paced around in the snow. One of the officers spoke with her, and his body-worn camera captured their exchange.

The woman confirmed she was the one who had called, and the officer asked, "What's going on?" She said, "My baby daddy he bust me in my mouth," and asked if police had caught him. The officer said they had not and asked if she needed an ambulance.

2

She looked around and responded, in a wavering voice, "No, I need him in jail." She said she thought he was in the house and asked the officers to "get him out." The officer asked for his name; she said, "Jack," and on prompting for his last name, "Guy." The officer solicited information about his appearance as she continued to pace around. Then the officer asked why he hit her. She said, "We was arguing, and he just hit me." She volunteered that the nearby car was his. The officer asked if "it happened" in the car, and if the child was in the back; she said yes to both. She confirmed she believed he was in the house. The officer asked if she wanted them to "go check," and she said that she did but warned that he would probably try to run out and drive off. The officer asked if he had any weapons, which she did not know, and whether she had a key, to which she responded that the door was unlocked. Before entering the home, the officer confirmed the name "Jack" and that the woman did not "need any medical."

The officers followed the woman through the front door. A few seconds later, as she walked through the home, she shouted that he was running out the door. The officers ran outside, encountered a man in the alley whom they identified as appellant Jack Guy, and arrested him. Respondent State of Minnesota charged Guy with felony domestic assault.[1]

Before trial, the state informed the district court that it expected the complainant would not testify and moved to admit her 911 calls and the recorded statements she made to police before they entered the house. The state clarified that it was not seeking to admit

---

[1] Guy has two prior domestic violence-related convictions that enhance the offense to a felony.

statements the complainant made after Guy was arrested because they are "clearly testimonial." Over Guy's objection, the district court provisionally granted the motion "if she doesn't show up." The complainant did not testify at trial, and the state introduced the recordings. The jury found Guy guilty, and the district court sentenced him to 21 months' imprisonment.

Guy appeals.

## DECISION

### I. Admission of the complainant's statements to police did not violate Guy's confrontation rights.

Under the Confrontation Clause, a criminal defendant has the right "to be confronted with the witnesses against him." U.S. Const. amend. VI. Admission of an out-of-court statement violates the Confrontation Clause when "the statement in question was testimonial, the statement was admitted for the truth of the matter asserted, and the defendant was unable to cross-examine the declarant." *Andersen v. State*, 830 N.W.2d 1, 9 (Minn. 2013) (citing *Crawford v. Washington*, 541 U.S. 36, 59 & n.9 (2004)). We review de novo whether the admission of evidence violates the Confrontation Clause. *State v. Sutter*, 959 N.W.2d 760, 764 (Minn. 2021).

The only disputed issue here is whether the complainant's statements to police were testimonial. We determine whether a statement is testimonial by assessing its primary purpose. *Id.* at 766. We do so by "objectively evaluating the statements and actions of the parties to the encounter, in light of the circumstances." *Id.* When a statement's primary purpose is "to establish or prove past events potentially relevant to later criminal

4

prosecution," it is testimonial. *State v. Warsame*, 735 N.W.2d 684, 690 (Minn. 2007) (quoting *Davis v. Washington*, 547 U.S. 813, 822 (2006)). But when circumstances indicate the statement's primary purpose is "to enable police assistance to meet an ongoing emergency," it is not testimonial. *Id.* (quoting *Davis*, 547 U.S. at 822). Often included in this second category are statements responding to initial police inquiries after a domestic dispute because they focus on the safety of the victim and the officers. *Davis*, 547 U.S. at 832. This is particularly true when the alleged assailant has not yet been apprehended. *See Warsame*, 735 N.W.2d at 692.

To determine whether a statement was made during an ongoing emergency, we consider whether:

> (1) the person described events as they actually happened and not past events; (2) any "reasonable listener" would conclude that the victim was facing an ongoing emergency; (3) the questions asked and answers given were necessary to resolve a present emergency, rather than only to learn what had happened in the past; and (4) there was a low level of formality in the interview because the person's answers were frantic and their environment was not tranquil or safe.

*Sutter*, 959 N.W.2d at 767 (quotation omitted). We address each of these four factors in turn.

First, the timing of the complainant's statements is consistent with an emergency. Her first 911 call reported an assault that "just" happened. She called back only minutes later to ensure police were coming. When the officers arrived just a few minutes later, her statements and demeanor reflected her belief that Guy, who was in the house nearby, posed an ongoing threat until police intervened.

5

Guy contends that "[q]uite some time had passed" between the assault and the complainant's statements to police, pointing to statements she made to the officers after Guy's arrest. But those statements are captured in a portion of the video that the state never sought to present to the jury. And Guy identifies no authority for the proposition that information never presented to the jury can be used to establish the circumstances of statements that are, particularly when that information was unknown to police at the time of the statements in question. Moreover, the complainant's later statements identify other events that occurred between the assault and her conversation with police but do not indicate how much time passed. Nor do they negate the circumstances reflecting that the complainant and the police considered Guy an ongoing threat.

Second, a reasonable listener would believe there was an ongoing emergency. The complainant called 911 twice to get police protection, then remained outside in the cold with her child until the officers arrived. She was pacing and agitated. She declined medical attention but was visibly injured, with a bloody lip that had dripped onto her clothing. In short, the emergency caused by the initial assault had not been resolved at the time the complainant spoke with the officers in the alley.

Third, the questions and answers were focused on current circumstances and safety considerations to resolve this ongoing emergency. The officers sought basic information about what was happening, whether the complainant needed medical assistance, the identity and appearance of the person who assaulted her, and whether the assailant had weapons. They did not ask for, and the complainant did not volunteer, any information about prior incidents. And there was little discussion of the assault itself, only enough to

6

provide the officers a sense of the situation. Guy contends the complainant's statement that she "need[ed] him in jail" points to anticipated prosecution and, therefore, a testimonial statement. But the context of that brief, spontaneous statement shows that she referenced jail as a means of eliminating the ongoing threat that he posed to her.

Fourth, the exchange was relatively informal and occurred amid a situation that was not actively violent but remained unsafe. Police questioned the complainant as she paced around with a child on her hip. Their questions were brief and straightforward, and the complainant made several spontaneous statements, primarily expressing concern about Guy's presence in the home. The conversation took place in a cold, snowy alley and lasted less than a minute and a half.

In sum, the circumstances relevant to all four factors objectively indicate that the primary purpose of the complainant's statements was to resolve the ongoing emergency that Guy's assault precipitated. As such, the statements are not testimonial and their admission did not violate Guy's right to confrontation.

## II. Sufficient evidence proves the offense occurred in Hennepin County.

In deciding a challenge to the sufficiency of the evidence, we view the record "in the light most favorable to the verdict" and assume the jury disbelieved any contrary testimony. *State v. King*, 990 N.W.2d 406, 416 (Minn. 2023) (quotation omitted). When a conviction rests on circumstantial evidence, we conduct a two-part review. *State v. Beganovic*, 991 N.W.2d 638, 654 (Minn. 2023). First, we identify the circumstances proved, deferring to the jury's credibility determinations and weighing of the evidence. *Id.* The circumstances proved are those that are consistent with the jury's verdict. *State v.*

7

*German*, 929 N.W.2d 466, 472 (Minn. App. 2019). Second, we independently determine whether the circumstances proved, as a whole, are "consistent with guilt and inconsistent with any rational hypothesis except that of guilt." *State v. Silvernail*, 831 N.W.2d 594, 599 (Minn. 2013) (quotation omitted). If the circumstances proved support rational inferences inconsistent with guilt, "the conviction should be overturned." *Beganovic*, 991 N.W.2d at 654. "But we will not overturn a guilty verdict on conjecture alone." *State v. Stewart*, 923 N.W.2d 668, 673 (Minn. App. 2019) (quotation omitted), *rev. denied* (Minn. Apr. 16, 2019).

Guy argues that the evidence is insufficient to sustain his conviction because the state failed to prove that the offense occurred in Hennepin County, which he contends is an essential element of the offense under *State v. Bahri*, 514 N.W.2d 580, 582 (Minn. App. 1994), *rev. denied* (Minn. June 15, 1994). The state does not dispute that this is an essential element but contends it presented evidence that eliminated any reasonable possibility that the offense occurred anywhere other than Hennepin County.

The circumstances proved are as follows. Guy hit the complainant in the mouth while they were together in his car. "[J]ust" afterward, at 10:15 p.m., the complainant called 911 to report the assault and request police assistance at an address on Penn Avenue in Minneapolis, saying that she was heading there. Dispatchers for "Minneapolis 911," which is "part of the city," received and logged the call. When she called back three minutes later, another Minneapolis 911 dispatcher confirmed that the call was logged. Just a few minutes after that, Minneapolis police officers arrived at the Penn Avenue address

8

and found the complainant in the alley behind the home. All of Minneapolis is in Hennepin County.

Guy argues that because the assault happened in a car, the circumstances proved are consistent with the inference that the assault could have happened "anywhere in the Twin Cities," not necessarily in Minneapolis. But this inference is not reasonable because it ignores the other circumstances. *See Silvernail*, 831 N.W.2d at 599 (stating that we consider circumstances proved as a whole). The assault occurred "just" before the complainant called Minneapolis 911. The record provides no reasonable basis for believing that "just" refers to an assault that occurred significantly earlier or at a different location, or that a 911 call placed outside the city would go to Minneapolis 911. And the responding officers found the complainant at the indicated Minneapolis address only a few minutes after she made the 911 calls, which makes it unreasonable to think she was in some other part of the Twin Cities at the time of the calls and the assault. In short, viewing the circumstances proved as a whole persuades us that the only reasonable inference is that the assault occurred in Minneapolis and, therefore, Hennepin County. Accordingly, Guy's claim of insufficient evidence fails.

**Affirmed.**